UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Joseph Lucier

    v.

                                  Civil No. 14-cv-522-JD
                                  Opinion No. 2015 DNH 087

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R


    Joseph Lucier seeks judicial review, pursuant to 42 U.S.C.
§ 405(g), of the decision of the Acting Commissioner of the
Social Security Administration, denying his application for
supplemental security income.  Lucier moves to reverse and
remand the decision, contending that the Administrative Law
Judge ("ALJ") erred in assessing the medical opinion evidence,
failed to consider all of his impairments, erred in finding that
he could perform light work with additional limitations, and
lacked substantial evidence to support the finding that he was
not disabled.  The Acting Commissioner moves to affirm.


Standard of Review

    In reviewing the final decision of the Acting Commissioner
in a social security case, the court "is limited to determining
whether the ALJ deployed the proper legal standards and found

facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Background

The background information is summarized from the parties' joint statement of material facts, document no. 8.

Lucier was fifty-two years old when he applied for supplemental security income.  He has an eighth grade education, and he previously worked as a construction laborer.  In support of his application, Lucier stated that he had been disabled since June 1, 2007, because of eye problems; back, hip, and leg pain and weakness; chronic migraines; fibromyalgia; learning disabilities; attention deficit disorder; depression; and anxiety.

Lucier's treatment records begin in November of 2008 with a visit to Concord Hospital Family Health Center.  Lucier stated that he had had chronic low back pain and that he was taking

methadone and ibuprofen for the pain.  On examination, the
physician found some reduced mobility, no spinal tenderness, and
normal neurological functioning.  Subsequent treatment notes
from the period up to July of 2010 show that Lucier continued to
complain of back pain and had essentially normal examination
results with some tenderness.  The record shows no evidence of
treatment between July of 2010 and January of 2012.

For purposes of his application for Medicaid benefits,
Lucier had a psychological evaluation done by William Dinan,
Ph.D., on February 1, 2012.  Dr. Dinan found that Lucier had
moderate functional limitations in daily activities and social
interactions, that he often had difficulty sustaining
concentration, persistence, and pace for work tasks, and that he
experienced repeated deterioration and decompensation in
response to work stress.  Dr. Dinan diagnosed a depressive
disorder, not otherwise specified, and found that Lucier was
unlikely to return to gainful employment even if he complied
with recommended treatment.

Matthew Masewic, M.D., a state agency consultant, did a
physical examination of Lucier on February 21, 2012.  Lucier
complained of hip, leg, and knee pain, related a history of
headaches, and said that his primary care physician had
mentioned that he might have fibromyalgia.  Dr. Masewic found
that Lucier's neurological functioning was intact and found

inconsistent results in Lucier's leg strength because Lucier's claimed inability to flex his hips and raise his legs was contradicted by his demonstrated ability to bend and walk.  Dr. Masewic found no trigger points associated with fibromyalgia.

Dr. Masewic concluded that Lucier likely had chronic mechanical back pain but it was unclear what was causing Lucier's broader complaints of pain.  He also stated that if he took Lucier's complaints as true the muscle aches and pains would have a moderate effect on his functional capacity and the knee pain would have a mild to moderate effect on his functional capacity.  He found no trigger points to support a fibromyalgia diagnosis.

Jonathan Jaffe, M.D., a state agency physician, reviewed Lucier's medical record and provided his opinion about Lucier's functional capacity on February 24, 2012.  Dr. Jaffe found that Lucier had a functional capacity to do light work but had some limitations in his ability to do postural activities.

In late March of 2012, Dr. Windler did a physical examination of Lucier for his application for Medicaid benefits. Based on his examination and Lucier's complaints and history, Dr. Windler diagnosed likely degenerative spondylosis of the lumbar spine, likely right rotator cuff tear, traumatic knee arthritis, deconditioning, and headaches.  Despite his opinion of fair or poor prognoses for these conditions, Dr. Windler also

thought that the conditions could be improved with treatment.
In his functional assessment, Dr. Windler found that Lucier
could lift, carry, walk, sit, and stand within the range of
sedentary work but that he had limited ability to push and pull
and could never do certain postural activities.

Michael Evans, M.D. did a consultative psychiatric
evaluation of Lucier on April 12, 2012.  Dr. Evans diagnosed
alcohol dependence in remission and dysthymia (a mild but
chronic form of depression) and also noted "rule out" a schizoid
personality disorder.  In Dr. Evans's opinion, despite his
difficulty in social situations and in interacting appropriately
with other people, Lucier was able to understand and remember
instructions, communicate effectively, sustain attention and
concentration, make simple decisions, maintain attendance and
schedules, and interact appropriately with supervisors.  Dr.
Evans also noted that Lucier had doubled over in pain on his
right side, which Lucier attributed to having broken ribs, and
Dr. Windler thought that pain significantly affected Lucier's
ability to function.

On April 18, 2012, Craig Stenslie, Ph.D., a state agency
psychologist, reviewed Lucier's records and concluded that
Lucier's affective and personality disorders caused mild
restrictions on Lucier's daily activities, moderate difficulties
in social functioning, and moderate difficulties in maintaining

concentration, persistence, and pace.  Dr. Stenslie concluded that Lucier could do work that involved short and simple tasks without working with the public.

In early 2013, Lucier was treated at Suncook Family Health Center for complaints of low back pain.  Lucier's mental status and neurological examination results were normal.  Dr. Alan Stein diagnosed osteoarthritis of the spine and fibromyalgia, based on Lucier's complaints and multiple tender points.

Rachel Heath, Physical Therapist, did a functional assessment of Lucier at Rehabilitation Services of Concord Hospital on June 10, 2013.  Based on the results of the testing, Heath found that Lucier could frequently perform motor tasks and repetitive motions.  He could occasionally do activities of bending, climbing, standing, sitting, walking, and driving. Heath concluded that Lucier was restricted to part-time work at the sedentary to light exertional levels.

The hearing on Lucier's application was held on June 11, 2013.  He testified that he could not work because of pain in his back, hips, legs, shoulders, and right arm; nausea; and cluster headaches.  He said that he had difficulty climbing stairs, that he could clean his apartment (which is located in his sister's home) with difficulty, and that he had trouble getting shirts on because of his shoulder and trouble with shoes because he could not bend.  He said that he could drive and went

6

shopping by himself although he would need help getting things off of high and low shelves.  Lucier also described how pain had limited other activities.  During the hearing, he alternated between sitting and standing.

LeeAnn Hilliker, Lucier's sister, also testified at the hearing.  She said that Lucier had difficulty climbing stairs, that he was in pain most of the time, that he could not sit long enough to complete a meal, that he was uncomfortable riding in the car, that his knees gave out when he walked, and that he had severe cluster headaches which kept him in bed for days at a time.  She also said that Lucier had memory issues and an inability to concentrate for a long period of time.

The ALJ described to the vocational expert a hypothetical individual with Lucier's background and work history who could do light work, with limitations for climbing and some postural activities, had to avoid hazards, was limited to uncomplicated tasks, as was limited in his ability to have contact with the public.  The vocational expert stated that such an individual would not be able to do Lucier's past work but could work as a small products assembler, laundry classifier, and a price marker.  When the ALJ added a requirement that the individual be able to sit and stand at will, the vocational expert testified that would not change the jobs she had identified, based on her own experience but not as those jobs were described in the

Dictionary of Occupational Titles.  The ALJ stipulated that if Lucier were limited to sedentary work, he would be found to be disabled under the Medical-Vocational Guidelines.

The ALJ issued her decision on July 15, 2013.  She found that Lucier had severe impairments of degenerative disc disease of the lumbar spine and dysthymia but concluded that Lucier's knee pain, alcohol dependence in remission, and headaches were not severe limitations.  She also found that his colitis had not lasted the required twelve months and that a diagnosis of fibromyalgia was not medically supported.  The ALJ assessed a reduced capacity to do light work because of postural limitations, a restriction to uncomplicated tasks, and a need to avoid contact with the general public.  Based on the vocational expert's opinions, the ALJ found that work existed that Lucier could do.  The Appeals Council denied Lucier's request for review on August 21, 2014.

## Discussion

Lucier recites a variety of errors that he contends the ALJ made in finding that he was not disabled.  Because the issue of whether substantial evidence exists to support the ALJ's residual functional capacity assessment is dispositive, it is not necessary to consider the other alleged errors.  To the

extent other errors were made, they can be remedied, if
necessary, on remand.

The ALJ's physical residual functional capacity assessment,
a reduced range of light work, was based on Dr. Jaffe's opinion.
No other medical opinion in the record found that Lucier was
capable of full-time light work and, indeed, other opinions
concluded that Lucier was limited to sedentary work and part-
time work.  Therefore, the ALJ's assessment is properly
supported only if Dr. Jaffe's opinion can provide substantial
evidence of Lucier's residual functional capacity.

The ALJ may rely on opinions of state agency consultants
under the same analysis as that applied to opinions of treating
or examining medical sources.  § 416.927(e); Ormon v. Astrue,
497 F. App'x 81, 84 (1st Cir. 2012); Smalledge v. Colvin, 2014
WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Titles II and
XVI:  Consideration of Administrative Findings of Fact by State
Agency Medical and Psychological Consultants and Other Program
Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996).  Because a
consultant's opinion is based on a review of the record, a state
agency physician's opinion can be given weight only to the
extent the opinion is supported by evidence in the record.  SSR
96-6p, 1996 WL 374180, at *2.  A state agency physician's
opinion that is based on his review of only part of the record
cannot provide substantial evidence to support the ALJ's

residual functional capacity finding if other evidence, not reviewed, supports the claimant's limitations. Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 F. App'x 19, 20 (1st Cir. 2006); Jones v. Colvin, 2015 WL 687219, at *13 (D.R.I. Feb. 18, 2015); Spielberg v. Astrue, 2011 WL 4971971 at *6 (D.N.H. Oct. 18, 2011).

In this case, Dr. Jaffe formed his opinion that Lucier was capable of light work, with certain restrictions, based on his review of Lucier's records up to the date of his opinion, February 24, 2012. By way of explanation of his opinion, Dr. Jaffe cited Dr. Masewic's consultative report, a diagnosis of diverticulitis in January of 2012, and treatment notes from Concord Hospital in June of 2010 when Lucier was seen for neck, back, and hip pain after he fell off of a roof.

Dr. Masewic did not assess Lucier's strength or functional capacity for work. Instead, he wrote that if he accepted Lucier's account of his aches and pains those would have "a moderate effect on functional capacity." He also wrote that Lucier's description of his headaches would cause moderate to severe limitations. Dr. Masewic also found no trigger points to support a fibromyalgia diagnosis. In total, Dr. Masewic's opinion does not provide a residual functional capacity assessment for light work.

In addition, Dr. Jaffe did not review additions to Lucier's record after February 24, 2012. Dr. Windler examined Lucier in March of 2012 and concluded that Lucier was limited to sedentary work. Dr. Stein treated Lucier in February and March of 2013 and diagnosed fibromyalgia, contrary to Dr. Masewicz's report, based on finding five out of nine positive trigger points. Physical Therapist Heath examined Lucier in June of 2013, just before the hearing, and concluded that he was limited to sedentary work to light work, but only on a part-time basis.

The new evidence in Lucier's record supports his claim of being limited to sedentary work. Because Dr. Jaffe did not review Dr. Windler's opinion, Dr. Stein's treatment notes and diagnosis, or Physical Therapist Heath's assessment, Dr. Jaffe's opinion cannot provide substantial evidence to support the ALJ's residual functional capacity assessment.

"The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35 (1st Cir. 1999). Because the ALJ is a lay person, except in rare cases she is "not qualified to interpret raw medical data in functional terms." Id.; see also Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). Therefore, when a claimant's functional capacity is at issue, an

11

expert's evaluation is essential "'unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" Manso-Pizarro, 76 F.3d at 17 (quoting Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991)).

In the absence of Dr. Jaffe's opinion, the record lacks an expert evaluation to support the ALJ's functional capacity assessment. Other evidence in the record supports a residual functional capacity assessment for sedentary work. Therefore, the ALJ erred assessing Lucier's functional capacity without the support of an expert's evaluation. See Gregoire v. Colvin, 2015 WL 786965, at *4 (D.N.H. Feb. 25, 2015) ("'And, [a]bsent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion.'" quoting Alcantara, 257 F. App'x at 334).

Significantly, in this case, the ALJ stipulated that if Lucier were limited to sedentary work, he would be found to be disabled by application of the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 7) is granted. The Acting Commissioner's motion to affirm (document no. 9) is denied.

The case is reversed and remanded for further proceedings pursuant to Sentence Four of § 405g.

SO ORDERED.

Joseph A DiClerico, Jr.
_____
Joseph DiClerico, Jr.
United States District Judge


April 23, 2015

cc:  Sheila O'Leary Zakre, Esq.
     Robert J. Rabuck, Esq.